61 P.3d 622

**Georgia ALLEN, personal representative of the Estate of Marion Allen Dingman, Plaintiff–Appellant,**

v.

**Randy J. STOKER, Defendant–Respondent.**

No. 27694.

Court of Appeals of Idaho.

Oct. 16, 2002.

Review Denied Jan. 17, 2003.

**266**

Ellis, Brown and Sheils Chtd., Boise, for appellant. Allen B. Ellis argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Mark S. Prusynski argued.

LANSING, Judge.

This is an action brought against an attorney by a non-client. The plaintiff, Georgia Allen, is a beneficiary and the current personal representative of an estate. She claims injury arising from the negligence of Randy Stoker, the attorney who represented the former personal representative. Summary judgment in favor of Stoker was entered by the district court, and Allen appeals.

## I.

### FACTS AND PROCEDURAL HISTORY

In 1996, Marion Dingman died leaving several holographic wills. She was survived by three adult children, Georgia Allen, Kevin Allen, and Roberta Mater. The various wills were in conflict regarding the designation of a personal representative for the estate. Kevin and Georgia each sought to be named as personal representative. Both were represented by counsel, with Kevin being represented by Stoker. In a probate proceeding, the magistrate court appointed Kevin as personal representative, but also determined that supervised administration was required to insure proper distribution of estate assets. The magistrate ordered that Kevin not remove money from certain estate bank accounts except upon the signature of both Kevin and his attorney. The order directed Kevin and Stoker to submit signature cards with both their names to all the involved financial institutions. Kevin appealed from

this order, and he and Stoker did not submit the ordered dual signature cards. Subsequent to the magistrate's order, Kevin withdrew funds from estate accounts and spent the money. This misappropriation of funds was not discovered until after the magistrate's order had been affirmed by the district court. Georgia was then substituted as personal representative in place of Kevin, and Kevin was enjoined from withdrawing any further funds. Stoker filed a motion to withdraw as counsel, which was granted. Kevin subsequently died in an auto accident.

Georgia brought this action against Stoker, alleging that his negligence in failing to comply with the magistrate's order regarding signature cards allowed the loss of estate assets and thereby harmed her, an estate beneficiary. Stoker admitted that he and Kevin had not submitted signature cards as ordered and that Kevin misappropriated estate funds, but he moved for summary judgment on the ground that, as attorney for the personal representative, he had owed no duty of care to Georgia, who was not his client. The district court granted Stoker's motion, and Georgia appeals.

## II.

### DISCUSSION

In an appeal from a summary judgment, we apply the same legal standard that is utilized by the trial court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). Summary judgment may be entered only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho Rule of Civil Procedure 56(c). *See also Avila v. Wahlquist,* 126 Idaho 745, 747, 890 P.2d 331, 333 (1995); *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 516–17, 808 P.2d 851, 853–54 (1991). In this case, it is not contended that there are material factual issues; the sole issue presented by the motion is one of law. Therefore, we exercise free review. *Roell v. City of Boise,* 130

Idaho 199, 201, 938 P.2d 1237, 1239 (1997); *Friel*, 126 Idaho at 485, 887 P.2d at 30.

In challenging the summary judgment, Georgia presents two theories for the existence of a duty of care owed to her and other heirs by Stoker. First, she asserts that estate heirs are intended third-party beneficiaries of the legal services provided to the personal representative. Second, she contends that the magistrate's order for dual signature cards created a duty owed by Stoker to protect the interest of estate beneficiaries. We consider each of these theories in turn.

## A. Third-party Beneficiary Theory

■ Georgia asserts that Stoker owed to all heirs a duty of care to protect estate assets because the heirs are intended third-party beneficiaries of the personal representative's relationship with the attorney. For this proposition, she relies upon authorities holding that a testator's intended beneficiaries who have been injured by negligent drafting of the will may sue the negligent attorney because they were intended beneficiaries of the attorney-client relationship. *See, e.g., Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961); *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81, 83 (1981).

■ We are not persuaded by Georgia's analogy to the defective will cases. Whatever the merit may be in applying a third-party beneficiary analysis in that context, it is not appropriate with respect to the relationship between counsel for the personal representative of an estate and the decedent's heirs. This is so because heirs are *not* necessarily intended beneficiaries of the attorney's services and, in fact, are frequently in a position of conflict with the attorney's client, the personal representative. The attorney is not hired to benefit any particular heir, but to assist the personal representative in the performance of his or her duties. The imposition of a duty owed by the attorney to the heirs would create a conflict of interest whenever a dispute arose between the personal representative and an heir. As the Washington Supreme Court explained in *Trask v. Butler*, 123 Wash.2d 835, 872 P.2d 1080 (1994), there are at least three reasons

why the recognition of such duty is inappropriate:

> (1) the estate and its beneficiaries are *incidental*, not intended, beneficiaries of that attorney-personal representative relationship; (2) the estate heirs may bring a direct cause of action against the personal representative for breach of fiduciary duty; and (3) the unresolvable conflict of interest an estate attorney encounters in deciding whether to represent the personal representative, the estate, or the estate heirs unduly burdens the legal profession.

*Id.* at 1085 (emphasis in original). Other courts have rejected the imposition of a duty in this situation for much the same reasons. *See Ferguson v. Cramer*, 349 Md. 760, 709 A.2d 1279 (1998); *Goldberg v. Frye*, 217 Cal.App.3d 1258, 266 Cal.Rptr. 483 (1990); *Neal v. Baker*, 194 Ill.App.3d 485, 141 Ill.Dec. 517, 551 N.E.2d 704 (1990). We likewise conclude that Stoker assumed no duty toward the heirs when he undertook to represent the personal representative of the Dingman estate.

■ Our ruling does not leave heirs without protection. If malpractice by the attorney for a personal representative causes injury to an estate, the injury ordinarily may be rectified through a malpractice action brought by the personal representative. If, on the other hand, a loss to the estate is caused by the malfeasance of the personal representative, the personal representative may be sued by the heirs. Unlike the attorney, the personal representative owes a fiduciary duty to heirs, and a violation of this duty is actionable. Idaho Code § 15–3–712; *Kolouch v. First Sec. Bank of Idaho*, 128 Idaho 186, 195, 911 P.2d 779, 788 (Ct.App. 1996).

## B. Theory of Duty Created by Magistrate's Order

■ Georgia also argues that the magistrate's order directing Stoker to become a required signatory for withdrawal of funds from the estate bank accounts obligated Stoker to preserve the estate funds for the benefit of the heirs. In support, she relies principally upon *McEvoy v. Helikson*, 277

Or. 781, 562 P.2d 540 (1977), a case which arose from a child-custody dispute. In *McEvoy*, the father was awarded primary custody of the child, but the mother, a citizen of Switzerland, was given temporary custody. The parents and their attorneys signed a stipulation for an order that the mother's attorney would hold the mother's passport until the child was returned to the father. The mother's attorney failed to comply, with the consequence that the mother was able to use her passport to depart to Switzerland with the child. The father subsequently sued the mother's attorney for the attorney's negligence in violating the order. The Oregon Supreme Court held that the father's complaint alleged a cause of action for negligence despite the absence of an attorney-client relationship between the father and the defendant attorney. The court noted that the stipulation and order did not require that the attorney perform functions as an attorney representing a client, but a non-legal duty in the nature of an escrow. The court emphasized that the attorney, by signing the stipulation for entry of the order, voluntarily undertook and accepted the duty imposed by the order. *Id.* at 542–43. Thus, liability arose despite the lack of attorney-client relationship because the negligence was not in the attorney's performance of legal services for his client but in the violation of an assumed duty to the father.

The present case is distinguishable from *McEvoy* in that nothing in the record here indicates that Stoker requested, agreed to, or acquiesced in the magistrate's order that he become a signatory on the estate's bank accounts. There is no evidence that Stoker proposed such an arrangement, by stipulation or otherwise; and rather than expressing acquiescence, he appealed from the order on behalf of his client. Therefore, the circumstance giving genesis to the duty found in *McEvoy*—a voluntary undertaking—is not present here.

Allen also refers us to an Idaho decision that recognized a duty owed by an attorney to a non-client, *Jones v. Runft, Leroy, Coffin,*

& *Matthews, Chtd.,* 125 Idaho 607, 873 P.2d 861 (1994). In *Jones,* an attorney representing the borrower in a secured loan transaction received the loan monies from the lender's agent together with a letter stating, "Your responsibility is to handle the transaction in the best interests of [the lender]." The attorney forwarded these monies to an escrow company, which disbursed the funds without having obtained one of the security instruments that the lender was entitled to receive. When the borrower later defaulted on the loan, the lender sued the borrower's attorney and the escrow company. The lender alleged that the attorney had erroneously informed the escrow company that it need not be concerned about the security. The trial court granted summary judgment for the attorney on the basis that the lender knew that the attorney had been representing the borrower, not the lender, throughout the transaction. The Idaho Supreme Court, however, reversed the summary judgment. It held that a duty toward the lender may have been created by the attorney's acceptance of the loan monies that were transmitted with the letter instructing the attorney to act in the lender's best interests. The Court said that the attorney's failure to repudiate the direction in the letter, coupled with his acceptance of the funds, created a material issue of fact as to whether the attorney contractually assumed a duty toward the lender. The Court noted that although the breach of an assumed duty sounds in tort, evidence showing the existence of an assumed duty can be contractual in nature. *Jones,* 125 Idaho at 612, 873 P.2d at 866.

From *Jones* we draw the same principle that was recognized in *McEvoy,* that an attorney representing a client may contractually undertake a duty to a non-client and may be held liable for breach of that duty. We conclude that this principle has no application to the case before us, however, because Georgia has presented no facts from which it could be found that Stoker voluntarily assumed an obligation to beneficiaries of the estate or acquiesced in the order that is claimed to have imposed such a duty.[1]

1. The propriety of the magistrate's order requiring that the personal representative's attorney control the use of estate funds is not at issue in

this appeal, and we imply no opinion as to whether that order was an appropriate or per-

Therefore, the district court correctly held that the undisputed facts demonstrate no breach of a duty of care owed by Stoker to Georgia.

### III.

### CONCLUSION

It has not been shown that Stoker owed a duty of care to Georgia Allen to prevent Kevin Allen's dissipation of estate assets. Therefore, the district court correctly granted summary judgment dismissing the action. The judgment of the district court is affirmed. Costs to respondent Stoker.

Chief Judge PERRY and Judge Pro Tem McKEE concur.

missible exercise of the court's jurisdiction in the probate action.